BRADFORD, Judge,
dissenting.
• Because I believe that the improper communication between the bailiff and the jury foreperson did not amount to fundamental error, I respectfully dissent. In addition, because I believe that Sowers cannot challenge the allegedly inconsistent verdicts on appeal and also that the evidence is sufficient to sustain the jury’s determination that Sowers was guilty but mentally ill of Counts II and III, I would vote to affirm Sowers’s convictions. However, I would vote to remand the matter to the trial court and instruct the trial court to amend the sentencing order to treat the habitual offender enhancement as a sentence enhancement on one of Sowers’s underlying felony convictions rather than treating it as a separate consecutive sentence.
*371 I. Whether the Communication Between the Jury Foreperson and the Bailiff Amounted to Fundamental Error
While it was error for the bailiff to communicate with the jury about the law applicable to the case without notifying the trial court or relaying the jury’s question to the trial court, it was not fundamental error. Sowers concedes that he did not object to or request a mistrial because of the conversation that took place between the jury foreperson and the bailiff when given an opportunity to do so before the trial court. As such, Sowers has waived this claim on appeal unless he can show that the erroneous conversation amounted to fundamental error. See Oldham v. State, 249 Ind. 301, 303, 231 N.E.2d 791, 792 (1967) (providing that failure to make a timely objection waives the right to question matters involving the conduct of the jury); Leslie v. State, 978 N.E.2d 486, 491 (Ind.Ct.App.2012) (providing that issues of juror impropriety are waived where the defendant did not object at trial). Again, the Indiana Supreme Court has emphasized that the fundamental error rule is extremely narrow and, in order to qualify as fundamental error, “the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.” Conner v. State, 711 N.E.2d 1238, 1246 (Ind.1999).
The record reveals that the jury foreperson approached the bailiff and asked if the jury “had to deliberate until they reached 100 percent agreement.” Tr. p. 354. The jury foreperson did not reduce this question to writing, and the bailiff did not notify the trial court of the jury’s question. Rather, the bailiff responded, “yes as the Judge stated in there you have to be 100 percent in agreement.” Tr. pp. 355-56. Again, at the conclusion of the evidence, the trial court instructed the jury, both verbally and in writing, as follows:
To return a verdict, each of you must agree to it. Each of you must decide the case for yourself, but only after considering the evidence with the other jurors. It is your duty to consult with each other. You should try to agree on a verdict, if you can do so without compromising your individual judgment. Do not hesitate to re-examine your own views and change your mind if you believe you are wrong. But do not give up your honest belief just because the other jurors may disagree, or just to end the deliberations.
Appellant’s App. p. 51 (emphases added). While not a complete restatement of the trial court’s instruction to the jury, the bailiffs answer was not in any way inconsistent with this instruction or the law which requires that verdicts, if reached, be unanimous. Further, it is important to note that the bailiff did not expressly state that the jury was required to reach a verdict.
The communication between the bailiff and the jury foreperson did not make it impossible for Sowers to receive a fair trial. At most, the record suggests that Juror Overman may have relied on the jury foreperson’s recitation of the bailiffs answer regarding whether the jurors had to agree “100%” to return a verdict. Juror Overman had expressed some hesitancy in finding Sowers guilty when polled by defense counsel and seemed disappointed to learn that the jury was not required to return a verdict. However, while the prosecutor stated that he interpreted Juror Overman’s statements as suggesting that she might have proceeded differently if she had known that the trial court could declare a mistrial if the jurors could not all agree on a verdict, nothing in the record *372 indicates that she definitely would have done so.
The prosecutor indicated that he interpreted the statement by Juror Overman to indicate that she apparently thought the jury must return a verdict. However, the prosecutor’s interpretation of Juror Over-man’s mindset is totally speculative. The prosecutor’s statements refer to a secondhand conversation, the specifics of which are vague. Moreover, neither party called the jury foreperson to testify about what she said to the jury, if anything, after speaking to the bailiff. Likewise, neither party called Juror Overman to testify about whether she overheard the jury foreperson’s conversation with the bailiff; what, if anything, the jury foreperson relayed to the members of jury about her conversation with the bailiff; or how Juror Overman’s understanding and interpretation of this conversation impacted her decision to vote to find Sowers guilty. For these reasons, the conversation between the jury foreperson and the bailiff did not constitute fundamental error.[6]
II. Inconsistent Verdicts/Sufficiency of the Evidence
Sowers also challenges the jury’s determination that he was not guilty of Count I by reason of insanity but guilty but mentally ill of Counts II and III. Sowers argues on appeal that these determinations are inconsistent and that the evidence is insufficient to support the determination that he was able to appreciate the wrongfulness of his behavior at the time he resisted arrest and fled from police. However, to the extent that Sowers attempts to challenge his convictions on the ground that the verdicts were inconsistent, the Indiana Supreme Court has held that “[jjury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable.” Beattie v. State, 924 N.E.2d 643, 649 (Ind.2010). As such, Sowers’s claim should instead be framed as whether the evidence was sufficient to sustain the jury’s determination that Sowers was able to appreciate the wrongfulness of his conduct.
With respect to claims of insanity, the Indiana Supreme Court has held as follows:
The defendant bears the burden of establishing the insanity defense by a preponderance of the evidence. I.C. § 35-41-4-l(b). To meet this burden, the defendant must establish both (1) that he or she suffers from a mental illness and (2) that the mental illness rendered him or her unable to appreciate the wrongfulness of his or her conduct at the time of the offense. See I.C. § 35-41-3-6(a). Thus, mental illness alone is not sufficient to relieve criminal responsibility. See Weeks v. State, 697 N.E.2d 28, 29 (Ind.1998). Rather, a defendant who is mentally ill but fails to establish that he or she was unable to appreciate the wrongfulness of his or her conduct may be found guilty but mentally ill (“GBMI”). See, e.g., Taylor v. State, 440 N.E.2d 1109, 1112 (Ind.1982).
Whether a defendant appreciated the wrongfulness of his or her conduct at the time of the offense is a question for the trier of fact. Thompson v. State, 804 N.E.2d 1146, 1149 (Ind.2004). Indiana Code section 35-36-2-2 provides for the use of expert testimony to assist the trier of fact in determining the *373 defendant’s insanity. Such expert testimony, however, is merely advisory, and even unanimous expert testimony is not conclusive on the issue of sanity. Cate v. State, 644 N.E.2d 546, 547 (Ind.1994). The trier of fact is free to disregard the unanimous testimony of experts and rely on conflicting testimony by lay witnesses. Barany v. State, 658 N.E.2d 60, 63 (Ind.1995). And even if there is no conflicting lay testimony, the trier of fact is free to disregard or discredit the expert testimony. Thompson, 804 N.E.2d at 1149.
Because it is the trier of fact’s province to weigh the evidence and assess witness credibility, a finding that a defendant was not insane at the time of the offense warrants substantial deference from reviewing courts. See Barany, 658 N.E.2d at 63. A defendant claiming the insanity defense should have prevailed at trial faces a heavy burden because he or she “is in the position of one appealing from a negative judgment.” Thompson, 804 N.E.2d at 1149. A court on review will not reweigh evidence, reassess witness credibility, or disturb reasonable inferences made by the trier of fact (even though “more reasonable” inferences could have been made). Id. at 1149-50.
Galloway v. State, 938 N.E.2d 699, 708-09 (Ind.2010).
Here, while Doctors Little and Rogers were both of the opinion that Sowers was unable to appreciate the wrongfulness of his actions, Detective Ronald Blackwell opined otherwise. The record reveals that Detective Blackwell testified that he believed that Sowers knew he was being followed by police because Sowers initially operated his vehicle in an appropriate manner while Officer Dillingham, who was in uniform and was following Sowers in a marked police vehicle with his police lights and siren activated, followed immediately behind Sowers’s vehicle. Officer Dilling-ham was subsequently joined by other marked police vehicles in his pursuit of Sowers. The weather was dry and sunny and there was nothing in the record indicating elements that would inhibit or impair Sowers’s vision of the officers or make it difficult for him to hear the sirens. In addition, when police finally caught up with Sowers, Detective Blackwell did not remember Sowers being overly agitated or anything strikingly unusual about Sowers’s appearance. Detective Blackwell testified that Sowers denied knowing that police were behind him, but that he “[did] not believe that.” Tr. p. 156.
Again, it was for the jury to weigh the evidence and assess witness credibility. Galloway, 938 N.E.2d at 709. The jury reviewed the reports submitted by Drs. Little and Rogers indicating that each believed that Sowers was unable to appreciate the wrongfulness of his conduct, but apparently did not agree with the Drs. Little’s and Roger’s opinions. The doctors’ opinions were “merely advisory” and were not conclusive on the issue of sanity, and it was within the province of the jury to credit Detective Blackwell’s testimony over the doctors’ opinions regarding Sowers’s sanity. See id. Because the reasonable inferences made by the jury with respect to witness credibility and the weight of witness testimony should not be disturbed on appeal, Sowers’s convictions should be affirmed on this ground.
In sum, I would conclude that conversation between the jury foreperson and the bailiff did not rise to the level of fundamental error. I would also conclude that the evidence is sufficient to support the jury’s determination regarding Sowers’s mental state. Accordingly, I respectfully dissent and would vote to affirm Sowers’s convictions. However, as is stated above, *374 I would vote to remand the matter to the trial court and instruct the trial court to amend the sentencing order to treat the habitual offender enhancement as a sentence enhancement on one of Sowers’s underlying felony convictions rather than treating it as a separate consecutive sentence. See Harris v. State, 964 N.E.2d 920, 927 (Ind.Ct.App.2012) (providing that a finding that one is a habitual offender is a sentence enhancement imposed upon the conviction of a subsequent felony and should not be treated as a separate sentence), trans. denied.

. Moreover, I disagree with the majority’s belief that Coolman v. State, 163 Ind. 503, 72 N.E. 568 (1904), is instructive because I believe that there are important and substantial differences between the comments attributed to the bailiff in the instant matter and those attributed to the bailiff in Coolman.